IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   12-cv-03068-WYD

JACOB GASIOROWSKI,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that found after Plaintiff turned age 18 that he was not disabled under the adult standard. For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff Jacob Gasiorowski is 23 years old and has lived with his parents all his life.  He received special education services through high school and currently attends Community College of Denver where he receives assistance and special accommodations.  (Administrative Record ["AR"] 183-243, 300-319, 338-343.)  Special accommodations include a quiet, secluded environment for testing and more time allowed for completion of tests and assignments.  (*Id*. 10.)  Additionally, he was placed in the basic language and math classes.  (*Id*. 338-343.)

Plaintiff was previously found to be disabled under the standards for supplemental security income ["SSI"] benefits for children. (AR 13.) When a child who was entitled to SSI disability benefits attains eighteen years of age, the agency must redetermine whether he is disabled under the adult standards. See 42 U.S.C. § 1382c(a)(3)(H)(iii); 20 C.F.R. § 416.987.

After Plaintiff turned age 18, the Commissioner determined that Plaintiff was not disabled under the adult standard (AR 73-79), and Plaintiff timely requested a hearing before an administrative law judge ["ALJ"]. (*Id*. 104-06.) The ALJ held a hearing on May 4, 2011 (*id*. 31-72), and issued a decision on June 17, 2011, finding Plaintiff was not disabled under the adult standard as of March 1, 2009. (*Id*. 13-25).

Specifically, the ALJ applied the sequential evaluation process for evaluating adult disability claims. See 20 C.F.R. § 416.920(a)(4). He first noted that Plaintiff "attained age 18 on June 16, 2007, and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18." (AR 15.) Plaintiff "was notified that he was found no longer disabled as of March 1, 2009, based on a redetermination of disability under the rules for adults who file new applications." (*Id*.)

At step two, the ALJ determined that Plaintiff had "severe" impairments of "social phobia and attention deficit hyperactivity disorder (ADHD)." (AR 15, Finding 2). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment at 20 C.F.R. pt. 404, subpt. P, app. 1, so as to be *per se* disabling. (*Id*. 16, Finding 3).

The ALJ then assessed Plaintiff's the residual functional capacity ["RFC"], finding he could "perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to meet the basic demands of competitive, remunerative unskilled work and is able to understand, carry out, and remember simple instructions; able to respond appropriately to supervisors, coworkers, and usual work situations; and able to deal with changes in a routine work setting." (AR 18, Finding 4.) "The claimant can have occasional work interactions with supervisors, coworkers, and the general public, and would work best in a non-distracting and somewhat isolated environment." (*Id.*)

At step four, the ALJ found that Plaintiff did not have any past relevant work. (AR 23-24, Finding 5.) At step five, the ALJ relied in part on vocational expert testimony to conclude that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including the unskilled jobs of janitor, hotel housekeeper, and laundry worker. (*Id.* 24, Findings 6-9.) Thus, the ALJ concluded that Plaintiff was not disabled under the adult disability standard. (*Id.* 25, Finding 10).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (AR 1-6), making the ALJ's decision the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2012). Plaintiff timely requested judicial review, and this appeal followed.

Plaintiff argues that the ALJ did not properly determine his severe impairments, and did not properly assess his credibility. Plaintiff also argues that the decision by the ALJ is not supported by substantial evidence in determining his RFC. Defendant asserts that the ALJ's decision is supported by substantial evidence and free of harmful

legal error. Defendant also asserts that Plaintiff's arguments are undeveloped and should be deemed waived.

II.     ANALYSIS

   A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

   B.     Plaintiff's Appeal

      1.     Whether Plaintiff's Arguments Should Be Waived

I first address the Commissioner's contention that Plaintiff's arguments in his opening brief are conclusory and undeveloped, and should be deemed waived. It is true that courts decline to consider arguments which are improperly developed or presented in an opening brief. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161

(10th Cir. 2012) ("She also presents a number of subissues and arguments, many of them poorly developed.  We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.") (citation omitted)); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that the court "routinely [has] declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief").

While a close call, I find that enough information has been presented by Plaintiff to enable me to make a determination on the merits.  Accordingly, I reject the Commissioner's argument that Plaintiff's arguments should be deemed waived.

        2.       <u>The Merits of Plaintiff's Arguments</u>

                a.       <u>The Step Two Analysis of Severe Impairments</u>

Plaintiff argues that the medical records clearly support the existence of an organic mental and/or seizure disorder as well as other impairments.  Yet, the ALJ did not find other severe impairments identified in the medical records as provided under 20 C.F.R. § 416.920(c) and Social Security Rulings 85-15, 85-16, and 86-8.

Turning to my analysis, "case law prescribes a very limited role for step two analysis."  *Lee v. Barnhart*, 117 F. App'x 674, 676-77 (10th Cir. 2004).  "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Id*. (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156 (1987) (O'Connor, J., concurring)).  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de

minimus' showing of impairment to move on to further steps in the analysis." *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004)).

The ALJ found that Plaintiff has a seizure disorder, but stated it was non-severe. (AR 15.)  As support for her finding, she stated that in May 2009, it was noted that Plaintiff "had not had any seizures since childhood and that recent MRI studies revealed 'entirely normal results' except for some mild cerebellar ectopia that did not reach the criteria for a Chiari I malformation." (*Id.*)  While Plaintiff objects to the ALJ's finding of nonseverity in connection with his seizures, I find that the ALJ's decision as to the seizure disorder was supported by substantial evidence. (*See, e.g.*, AR 394, 405-407, 403.)  Plaintiff failed to meet his burden of demonstrating that his seizures (or partial seizures as the record refers to them) significantly limit his ability to do basic work activities." *Langley*, 373 F.3d at 1118.

However, I do find error with the ALJ's step two findings.  The record revealed a number of impairments in the record that the ALJ did not consider, including but not limited to developmental delay and learning disabilities, coordination difficulty and right-sided ataxia, congenital left hemisphere dysfunction with cognitive impairments, and Asperger's syndrome.  (AR 332, 392, 405, 407, 428, 481, 529, 530-31, 535-40, 554.) The failure to consider these impairments was clearly error.  *See Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006).  While the Commissioner argues that the ALJ's error was harmless, I disagree.  The impairments that were not considered by the ALJ may well result in additional work limitations that were not taken into account in the RFC, particularly in light of my findings in the subsequent section that the ALJ did not properly weigh the medical evidence.

I also am not convinced that the ALJ considered the combined effect of Plaintiff's numerous impairments, and direct that this also be reassessed on remand.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'[a]t step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]'" (quotation omitted).  Several medical providers referred to the combination of Plaintiff's impairments as the basis for their findings that Plaintiff would have trouble working, as discussed below.

### b. The Weighing of the Medical Evidence

I also find that the ALJ did not properly weigh the medical evidence, including the opinions of the treating physicians.  The ALJ first violated the treating physician rule.  This requires that when weighing a treating physician's opinion, the ALJ "complete a sequential two-step inquiry, each step of which is analytically distinct".  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).  The initial determination the ALJ must make is whether the treating physician's medical opinion "is conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates."  *Id.*  "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  *Id.*  "If the opinion is deficient in either of these respects, it is not to be given controlling weight."  *Id.*  The ALJ failed to make this determination as to any of the treating physician opinions.

Further, the record does not indicate that the ALJ gave the opinion of the treating physicians deference as required and weighed the relevant factors as to the weight to

be given their reports. As explained by the Tenth Circuit, "[e]ven if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser,* 638 F.3d at 1330. "If this is not done, a remand is required." *Id.* As further explained:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to " controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§ ] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* (citing SSR 96–2p, 1996 WL 374188, at *4 (emphasis added)). "Thus, a deficiency as to the conditions for controlling weight raises the question of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330-31. This is also error that requires remand.

I also find error with several of the reasons given by the ALJ to give less weight to the treating physicians' opinions. Thus, the ALJ gave little weight to Dr. Quigley's opinion that Plaintiff would have "difficulty in a normal work environment" because the doctor "failed to indicate what type of limitations would cause the claimant to have difficulty with employment." (AR 23.) However, the ALJ failed to consider the fact that she is required to seek additional evidence or clarification from a treating physician "when the report. . . contains a conflict or ambiguity that must be resolved, [or] the

report does not contain all the necessary information . . . ." See 20 C.F.R. § 404.1512(e)(1); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

The ALJ also found that Dr. Quigley's opinions concerning Plaintiff's "work-related activities to be based at least in part on the claimant's subjective complaints and not necessarily on independent testing and evaluation." (AR 23.)  However, an ALJ may not reject the opinions of a physician "based merely on his own speculative conclusion that the[ir] report[s] w[ere] based only on claimant's subjective complaints." *Langley*, 373 F.3d at 1121.  "The ALJ [must have] a legal or evidentiary basis for h[er] finding that [a treating physician's] opinions were based merely on Plaintiff's subjective complaints of pain. *Id.* Here, the ALJ referenced the statement of Dr. Quigley that she agreed with the findings of Plaintiff's neuropsychological testing based on her discussions with the claimant and his parents.  (AR 23.)  However, her statement also references her treatment of Plaintiff from April 2009 through October 2010, and the discussions with Plaintiff and his parents were obviously part of that treatment.  Thus, it appears improper to reject Dr. Quigley's opinion on the basis she merely relied on Plaintiff's subjective complaints.  At the very least, if this was unclear, the ALJ should have contacted Dr. Quigley.  *See McGoffin*, 288 F.3d at 1252.

The ALJ also gave "little weight" to Dr. Renkin's opinions that Plaintiff's impairments lead to functional disability because this statement was at odds with his earlier statements in October 2009 that the claimant was "actually doing well" and overall doing well" with the use of medications and that the claimant was a "very capable young man."  (AR 23.)  However, this was an improper substitution of her judgment for that of the doctor.  *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir.

1996) (the ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals).

The fact that a patient is generally doing well on medications or is capable of "participat[ing] in school, as found by Dr. Renkin (AR 403-04) does not indicate or address whether functional limitations as to working may exist.  Thus, these findings are not necessarily inconsistent.[1]  *See Hutsell v. Massanari*, 259 F.3d 707, 712-13 (8th Cir. 2001) (finding that "the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity"); *Morales v. Apfel*, 225 F.3d 310, 319 (3rd Cir. 2000) (finding that it was not "proper for the ALJ to reject Dr. Erro's opinion based on Dr. Erro's notation that Morales was stable with medication. . . .For a person, such as Morales, who suffers from an affective or personality disorder marked by anxiety, the work environment is completely different from home or a mental health clinic. . . . Dr. Erro's observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work".).

Indeed, Dr. Renkin clarified his opinion in a letter that was provided to the Appeals Council.  (AR 1-5.)  Since it was considered by the Appeals Council, it is now part of the record.  *See Krauser*, 638 F.3d at 1328.  This new evidence becomes part of the administrative record to be considered when evaluating the ALJ's decision for

---

[1] This also impacts the ALJ's credibility discussion, discussed below, since the ALJ found that Plaintiff was not fully credible, in part, based on these statements of Dr. Renkin.  (AR 21.)

substantial evidence. *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Dr. Renkin explained in his letter that it was the combination of "intermittent seizure activity, medication and an underlying or pervasive developmental disorder" that "may be reasonably expected to cause sufficient functional problems to limit Jacob's employability significant enough to be considered a disability." (AR 554.) This letter further supports my finding that the ALJ did not properly evaluate Dr. Renkin's opinions, and I direct the ALJ to take this letter into account on remand.

Also, Plaintiff participated in therapy with Dr. Alexander from July 2010 to March 2011. (AR 506-28.) Additionally, Plaintiff submitted evidence from Dr. Alexander to the Appeals Council, which is now part of the record since it was considered by the Council. (*Id.* 1-5.) Dr. Alexander completed a Medical Opinion Re: Ability to Do Work-Related Activities (Mental) that diagnosed a Learning Disorder NOS, ADHD, Asperger's Disorder, Obsessive-Compulsive Disorder and Bipolar Disorder NOS - probable. (*Id.* 535.) He further found numerous severe limitations as a result of the mental impairments. Thus, he found that Plaintiff was unable to meet competitive standards in a number of areas, such as remembering work-like procedures, maintaining attention for a two hour segment, and completing a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.* 537-38.) Consistent with these findings, Dr. Alexander diagnosed Plaintiff with a GAF of 45, indicative of serious symptoms. *Keyes-Zachary*, 695 F.3d at 1162 n. 1. He also found that Plaintiff had marked difficulties in maintaining social functioning and deficiencies of concentration, persistence or pace, and four or more repeated episodes of decompensation. (*Id.* 539.) These findings could impact the ALJ's decision at step two as well as the RFC. Further,

he found that Plaintiff would miss more than four days from work per month because of his impairments. (*Id.* 540.) This evidence is extremely important in connection with the evaluation of Plaintiff's mental and cognitive impairments, and demonstrates much more severe mental/cognitive impairments than found by the ALJ. Thus, it must be considered on remand.

The opinion of Dr. Alexander was also supported by the neuropsychological examination by Dr. Pomerantz. He opined, among other things, that Plaintiff would likely have a very difficult time in a competitive and normal work environment and that the combination of his deficits suggested that he had a significant disability. (AR 22, 425.) Dr. Pomerantz found significant cognitive and other psychological impairments, including moderate and severe deficits in attention/concentration and in verbal mnemonic memory, severe impairments of mental processing speed, the ability to disregard irrelevant stimuli, and fine motor and hand-eye coordination on the right side, significant social limitations, and the ability to spell and perform arithmetic only at the fourth grade level. (*Id.* 425-28.) Dr. Pomerantz stated that his findings were suggestive of a verbal learning disability in addition to dyslexia, and that there was a 98% probability of cerebral dysfunction. (*Id.* at 426-27.) He also stated that Plaintiff's mood swings "may indicate that he has bipolar spectrum disorder in addition to his other psychiatric problems" and that Plaintiff may have Asperger's Syndrome. (*Id.* at 428.)

The ALJ found "that only some weight can be accorded to his opinions,. . . as they are inconsistent in that Dr. Pomerantz indicated that the claimant suffered from a 'significant disability' but then only indicated two work-related limitations for the claimant." (AR 23.) Thus, the ALJ considered only Dr. Pomerantz's opinion that

Plaintiff may be able to trained for vocational tasks that do not require extensive interaction with people and that would allow him to work in non-distracting and somewhat isolated environments." (*Id.* 22-23.)  Again, I find the ALJ is improperly substituting her opinion for that of Dr. Pomerantz.  Dr. Pomerantz made clear that it was the combination of Plaintiff's multiple cognitive and psychiatric problems that suggested a significant disability.  The ALJ cannot second guess that finding through her own speculation or lay judgment.  These significant cognitive impairments needed to be accurately addressed by the ALJ.  They were "specific medical findings" that the ALJ erred in rejecting in the absence of conflicting medical evidence.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  Further, they could significantly impact Plaintiff's ability to perform even unskilled work.  Thus, the opinion of Dr. Pomerantz must be reweighed on remand.  I also note that while I have not considered the letter of clarification of Dr. Pomerantz submitted for the first time on this appeal, as it was not part of the administrative record, I direct the ALJ to consider it on remand.

Finally on the medical evidence, the ALJ accorded significant weight to the opinions of two examining agency doctors.   The ALJ will obviously need to reweigh their opinions on remand after the treating physicians' opinions and other medical evidence, including the new evidence submitted to the Appeals Council, have been properly weighed.  The ALJ is directed on remand to keep in mind that "[t]he opinion of an examining physician or psychologist is generally entitled to less weight than that of a treating physician or psychologist, and the opinion of an agency physician or psychologist who has never seen the claimant is generally entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  Moreover, Plaintiff

contends that these doctors were not provided with the medical history or records available to Plaintiff's treating doctors, and thus were not in a position to be able to accurately identify and describe his impairments and limitations. If this is true, their opinions would not constitute substantial evidence in support of the RFC's findings.

Based upon the foregoing, I direct the ALJ to properly weigh the treating physicians' opinions and the other medical opinions referenced above. This will likely require that Plaintiff's RFC also be reassessed.

### c. Credibility

Finally, I find errors with the credibility assessment, and direct that this be reassessed on remand. As noted previously, the ALJ found Plaintiff not to be fully credible in part based on Dr. Renkin's statements that Plaintiff was doing well and was capable of going to school. (AR 21.) Again, however, these statements are not necessarily inconsistent with Plaintiff's statements. The ALJ also stated that "the claimant's reported activities", including taking college courses with accommodations and performing daily activities such as personal care, preparation of simple meals, shop, watching television and playing games (*id.* 20), "could not be performed if the claimant's mental limitations were as significant as alleged. . . ." (*Id.* 21.) However, the ALJ does not explain how Plaintiff's activities are actually inconsistent with Plaintiff's testimony and complaints. Indeed, Plaintiff's testimony appears to be consistent with the findings of Dr. Pomerantz which the ALJ gave some weight to as well as the opinions of the treating physicians and Dr. Alexander.

Also, while the ALJ states that Plaintiff's complaints are not consistent with the evidence, she failed what evidence she was relying on. The ALJ's finding was "stated in

conclusory fashion, without reference to 'those portions of the record with which [the doctor's] opinion was allegedly inconsistent.'" *Krauser,* 638 F.3d at 1331 (quotation omitted). "It may be possible to assemble support for this conclusion from parts of the record cited elsewhere in the ALJ's decision, but that is best left for the ALJ h[er]self to do in the proceedings on remand." *Id.* I also direct the ALJ on remand to consider the factors in SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

The ALJ also appeared to reject the hearing testimony of Plaintiff's mother and the letters from two aunts as their "statements do not establish that the claimant is disabled since these individuals are not medically trained to make exacting observations as to the dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms." (AR 21.) These witnesses were not, however, testifying as to medical signs and symptoms or to other findings that require medical training, and the ALJ's statement is not particularly relevant to these witnesses. Moreover, the regulations themselves make clear that evidence from lay witnesses is relevant to show the severity of the individual's impairment(s) and how it affects the individual's ability to work. 20 C.F.R. §416.913(d).

The ALJ also found that "by virtue of their relationship with the claimant, these individuals cannot be considered disinterested third party witnesses whose statements would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (AR 21.) The ALJ never, however, actually found that these witnesses were not credible, and the fact of a family relationship standing alone is not a proper basis to reject their testimony. This type of categorical discounting of testimony is contrary to the regulations which

acknowledge that friends and relatives can provide relevant testimony. 20 C.F.R. §416.913(d)(4); see also SSR 83-15, 1983 WL 31245, at *2 (1983) (recognizing the importance of information from family members in connection with those claimants who have chronic mental disorders).

Finally, the ALJ stated as to these other witnesses "that significant weight cannot be given to these statements because they, like the claimant's testimony, are simply not consistent with the evidence of record." (AR 21.) Again, however, the ALJ improperly failed to state what evidence she was referring to. Krauser, 638 F.3d at 1331.

III. CONCLUSION

Based upon the foregoing, I find that the ALJ erred at step two in not evaluating all of Plaintiff's impairments, individually and in combination, and in her assessment of the treating physicians' opinions and other medical opinions. I also find that the ALJ erred in her assessment of the credibility of Plaintiff and the third party witnesses. Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated: March 31, 2014

                                        BY THE COURT:

                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Senior United States District Judge